IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 08-18700 |
| | ) | |
| JOHN T. KEMP, | ) | |
| | ) | |
| Debtor. | ) | |
| -------------------------------- | ) | |
| | ) | |
| JOHN T. KEMP, | ) | Adversary No. 08-02448 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Camden, NJ |
| COUNTRYWIDE HOME LOANS, | ) | September 24, 2009 |
| | ) | 10:04 a.m. |
| Defendant. | ) | |


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE JUDITH H. WIZMUR
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:


For the Plaintiff:        BRUCE LEVITT, ESQUIRE
                          LEVITT & SLAFKES, P.C.
                          76 South Orange Avenue
                          Suite 305
                          South Orange, NJ   07079


For the Defendant:        HAROLD KAPLAN, ESQUIRE
                          FRENKEL LAMBERT WEISS WEISMAN
                          & GORDON, LLP
                          80 Main Street, Suite 460
                          West Orange, NJ   07052


Audio Operator:           NORMA SADER


Transcribed by:           DIANA DOMAN TRANSCRIBING
                          P.O. Box 129
                          Gibbsboro, New Jersey  08026-0129
                          Phone:   (856) 435-7172
                          Fax:     (856) 435-7124
                          E-mail:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1                           I N D E X

2

3    ARGUMENT:                                    PAGE NUMBER

4       By Mr. Kaplan                                 4

5       By Mr. Levitt                                11

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (The following was heard in open court at 10:04

2   a.m.)

3            THE COURT:  Please be seated.  Good morning.

4            MR. LEVITT:  Good morning.

5            MR. KAPLAN:  Good morning, Judge.

6            THE COURT:  Appearances, please.

7            MR. LEVITT:  Bruce Levitt on behalf of the

8   plaintiff.

9            MR. KAPLAN:  Harold Kaplan for Frenkel Lambert on

10  behalf of Countrywide.

11           THE COURT:  All right.  I have the supplemental and

12  second supplemental submissions of Countrywide and the reply.

13  Mr. Kaplan, I look to you first.  I am, frankly, appalled at

14  the confusion and lack of credibility of Countrywide's

15  response to the issue of the note -- the possession of the

16  note.

17           We started out with Ms. DeMartini's testimony that

18  the note never leaves the servicer.  She says that she saw a

19  Federal Express receipt whereby the actual note, the physical,

20  original note was transferred to the Foreclosure Department

21  internally in the same building, but that the note had not yet

22  been located.  That's where we stood at that point.

23           Then we had a submission, the supplemental

24  submission saying the original note has been found and can be

25  available for inspection.  It doesn't say where it was found,

Kaplan - Argument                                                        4

 1    who had possession or the like, but it was found and is

 2    available for inspection.

 3              And then without any explanation, there is a lost

 4    note affidavit presented dated February of 2007 indicating

 5    that the note cannot be found.  No explanation provided.  What

 6    do I do with that, Mr. Kaplan?

 7              MR. KAPLAN:  I don't know, Your Honor.  I do -- I

 8    can state to the Court that I am in possession of the original

 9    note and the original allonge, and it's here for inspection.

10    It was provided to me by the offices of Frenkel, Lambert, Ms.

11    Scovish.  What transpired in the -- in the interim, the

12    testimony was that it was internally moved to the Foreclosure

13    Department, I recall that.  Apparently, the Foreclosure

14    Department found it, transmitted it to counsel.  I now

15    physically have it in my possession.

16              THE COURT:  What's the lost note affidavit about?

17              MR. KAPLAN:  I did see a reference to that in

18    counsel's papers.  I was actually unaware that there was an

19    affidavit e-filed with the Court.  Apparently, it's --

20              THE COURT:  It's not an affidavit --

21              MR. KAPLAN:  -- there's some -- there is confusion,

22    because while Ms. DeMartini said she believed based upon the

23    Federal Express document that it was in the possession of the

24    Foreclosure Department, apparently, somebody thought it was

25    lost.  They were having significant difficulty finding it.

1    Ultimately, it was found.

2              THE COURT:  But that doesn't explain the 2007 lost

3    note affidavit, and --

4              MR. KAPLAN:  I understand, Your Honor.

5              THE COURT:  -- and do you have testimony to back up

6    what this is, and is the allonge signed?

7              MR. KAPLAN:  The allonge was presented to Your Honor

8    at the last hearing.

9              THE COURT:  That's the new allonge?

10             MR. KAPLAN:  That's correct.  This allonge --

11             THE COURT:  Now attached.

12             MR. KAPLAN:  -- that's correct, now attached.  Ms.

13   DeMartini testified about this allonge.

14             THE COURT:  Indeed, she did.  The allonge that was

15   prepared in connection with this litigation --

16             MR. KAPLAN:  Correct, Your Honor.

17             THE COURT:  -- and attached thereafter.  So the

18   offer of proof, without testimony, do you have somebody on the

19   phone to testify that this is the original document and that

20   -- you know, it was found?

21             MR. KAPLAN:  Ms. DeMartini is available for

22   testimony.  I hope that she has knowledge as to what

23   transpired as far as the --

24             THE COURT:  You hope.  You don't know?

25             MR. KAPLAN:  Well, I'm not -- don't specifically

1  know that the Foreclosure Department sent it or she

2  specifically sent it to counsel.  Okay.  I'm sure the debtor

3  can identify his signature on this document as being the

4  original.

5          THE COURT:  Well, let's -- let's understand that if

6  we accept the proposition that the lost note affidavit is of

7  no moment, that the original document stayed in the possession

8  of Countrywide Home Loan Servicing and was not endorsed as of

9  the date that the proof of claim was filed, that is, no

10  allonge was -- no executed allonge was attached, you have

11  neither possession by the owner of the note nor endorsement by

12  the transferor, by Countrywide Home Loans, Inc., how do you

13  get over that?  How do you solve that -- those two problems?

14          MR. KAPLAN:  Your Honor, I don't know specifically

15  -- I do know -- we do know that the -- there was an allonge

16  prepared because it was needed.  I can only tell you that this

17  note, this -- the back page of the mortgage appears to have an

18  endorsement on it.  It doesn't say -- it says "pay to the

19  order of."  It's blank.  "Without recourse, Countrywide Home

20  Loans," and it's signed, and it's a rubber stamp, it says

21  "David A. Spector, Managing Director."

22          THE COURT:  What's that?

23          MR. KAPLAN:  Your Honor, I can only tell you what

24  the document says.  I don't know who Mr. Spector is.  I would

25  simply state, Your Honor, that, obviously, the intention of

1    Countrywide to transfer the stock -- the ownership interest to

2    Bank of New York as Trustee, to the extent that that did not

3    happen, then I would submit that Countrywide is still the

4    holder of this paper and the party entitled to payment.

5           And while the Court may find that the proof of claim

6    is -- may be stricken because the party that allegedly filed

7    it doesn't have some type of standing, certainly, I think

8    there's still a party out there that has a right to enforce

9    the document, no --

10          THE COURT:  Well, is there a difference between

11   enforcing the obligation and enforcing it as a secured

12   obligation?  In other words, Countrywide presumably could

13   amend the proof of claim to reflect Countrywide Home Loans now

14   -- Inc. -- now operating as, whatever their new --

15          MR. KAPLAN:  Bank of America, right.

16          THE COURT:  -- Bank of America, so they would have

17   an obligation due to them, but that obligation would not

18   translate to a secured obligation, isn't that right, at least

19   for our purposes in terms of this case?

20          MR. KAPLAN:  Well, they are -- they have a security

21   interest, Your Honor.  There's a validly perfected mortgage.

22          THE COURT:  Yes, but the mortgage --

23          MR. KAPLAN:  The debtor testified he signed the

24   mortgage.

25          THE COURT:  -- is in the name -- the mortgagee is

1    Bank of New York as Trustee for CWA whatever.

2              MR. KAPLAN:  Well, I -- obviously, Your Honor, there

3    was a -- to the extent that the documents weren't transferred

4    in the ordinary course pursuant to the Uniform Commercial

5    Code, there is an issue.

6              I don't -- I don't understand maybe why the document

7    -- the mortgage effectively can't be assigned back to

8    Countrywide.  They're still the holder of the note.  The

9    debtor acknowledges that he signed the note and mortgage.  He

10   doesn't contest the validity of the note and the mortgage.

11             THE COURT:  So I'm to hypothesize that there could

12   be a reassignment?

13             MR. KAPLAN:  Well, I believe that the parties

14   involved need to remediate the problem so long as the Court is

15   of the mind to allow them to do that, and either Countrywide

16   needs to have the mortgage reassigned to it, because it

17   shouldn't have assigned the mortgage to Bank of New York in

18   that it didn't transfer the note in accordance with the

19   Uniform Commercial Code, and, therefore, both note and

20   mortgage need to be sent back to Countrywide so that they can

21   enforce their obligation and mortgage.

22             THE COURT:  There's been no motion to that effect,

23   no --

24             MR. KAPLAN:  I understand, Your Honor.  I'm simply

25   saying that that seems to be a way to remediate or to allow at

1    least Countrywide, if not Bank of New York, to proceed

2    accordingly.

3              THE COURT:  Well, that's hypothetical, and I -- I

4    don't rule on it.

5              MR. KAPLAN:  Well, I understand, Your Honor.  But

6    all I'm saying is, if you're asking -- if your ruling was to

7    disallow the claim, I assume that that is -- I'm assuming, but

8    I may be wrong, a hundred percent wrong -- that that is not

9    invalidating the mortgage and the right of a party to enforce

10   that mortgage at some point, maybe not in this Court as far as

11   payment of a claim, but as far as expungement from the county

12   record that there's no longer a lien on the property, that

13   would be a complete lack of equity in the sense of unjustly

14   enriching the debtor.

15             THE COURT:  Well, clearly, there's a real issue

16   about what happens down the road.  I rule on what's

17   immediately in front of me.

18             MR. KAPLAN:  I understand.

19             THE COURT:  And that's my task.  Are you aware, Mr.

20   Kaplan, that the brief that was submitted cited the wrong UCC

21   provision?  By that I mean, 3-309 was cited as a basis for the

22   opportunity of Countrywide as master servicer to enforce this

23   obligation, and the New Jersey version of 3-309 is different

24   than the UCC version that was cited.

25             MR. KAPLAN:  No, I'm not aware of that, Your Honor.

1          THE COURT:  It's amazing how sloppy this

2     presentation was, and I'm very disappointed about that.

3     Anyway -- all right.  Well, thank you, Mr. Kaplan.  Do you

4     want to present testimony?  Does it matter, you know, because

5     there is no testimony regarding possession by Bank of New York

6     as Trustee, correct?

7          MR. KAPLAN:  That's correct, Your Honor.  I'm not

8     disputing that.  That's what Ms. DeMartini testified to, that

9     the note -- she had no record of this note leaving and going

10    across country, across wherever, to Bank of New York.

11         THE COURT:  And you do understand as well that the

12    Pooling and Servicing Agreement requires that transfer, that

13    physical transfer of the note in accordance with -- and

14    endorsement -- in accordance with UCC requirements?

15         MR. KAPLAN:  I understand that, Your Honor.  I'll

16    simply say for the sake of edification, but this is -- and I

17    was told it was all e-filed -- this is apparently the index to

18    this Master Servicing Agreement showing all the loans and it

19    does reference the Kemp loan.  It's a double-side document,

20    includes all the loans.

21         And I can say that, although Your Honor is right and

22    the UCC and the Master Servicing Agreement apparently requires

23    that, procedure seems to indicate that they don't physically

24    move documents from place to place because of the fear of loss

25    and the trouble involved and the people handling them.  They

1    basically execute the necessary documents and retain them as

2    long as servicing's retained.   The documents only leave when

3    servicing is released.

4              THE COURT:  They take their chances.

5              MR. KAPLAN:  I understand, Your Honor.

6              THE COURT:  Understood.  Thank you.

7              Counsel, the proof of claim was filed -- let's see

8    -- it was filed by Countrywide Home Loans, Inc., servicer for

9    Bank of New York -- now, that's wrong.  We understand that.

10   Can the -- can these problems be corrected post-petition?  In

11   other words, we know that claims can be transferred post-

12   petition.

13             What about if the note, the original note now that

14   has seemingly appeared, is now transferred to the Bank of New

15   York as Trustee and amended, it wouldn't have to -- well, it

16   would be amended to reflect that Countrywide Home Loans, Inc.,

17   is not the right party, but Countrywide Home Loans, Master

18   Servicing or servicing whatever that name is, as servicer for

19   Bank of New York, Trustee, is filing this proof of claim,

20   what's wrong with that?

21             MR. LEVITT:  Your Honor, I'm not -- first of all, we

22   have issues as far as -- as far as transfer of claim in this

23   case, any claim that would be transferred would be -- be an

24   incorrect false claim, improper claim that was filed with this

25   Court, so I don't think the transfer of the claim is going to

1    alleviate any of these issues.  The question is can a new

2    claim be filed?

3            The bar date is past.  We've got issues under

4    Section 544 of the Bankruptcy Code which will involve the

5    Standing Trustee asserting the rights of the hypothetical lien

6    creditor and the bona fide purchaser of a piece of property

7    that on the date of the filing the petition, the note was in

8    one hand, the mortgage was in the other hand.  There are a

9    whole host of issues.

10           And I don't -- I'm not -- I can't pretend to speak

11   for the Trustee, although I know what I will tell the Trustee,

12   but I don't think those are issues for the Court at this

13   point.

14           I think -- there's a record before this Court, and I

15   thank Your Honor because I was equally as dumbfounded as you,

16   and I would go further with -- and suggest fraud on the Court,

17   fraud on me, fraud on my client, because of certain statements

18   that were made that are completely contradictory to documents

19   that have been previously filed before this Court such as a

20   proof of claim attaching a note which we now find out they

21   didn't even have; a motion for summary judgment with the

22   certification --

23           THE COURT:  What do you mean they didn't have?  They

24   did have.

25           MR. KAPLAN:  They had photocopies.

Levitt - Argument                                                        13

1           MR. LEVITT:  But, Your Honor, they made

2    representations that they had a note.  These papers say all

3    they had was a lost note affidavit that they didn't have a

4    note.

5           THE COURT:  Well, the lost note affidavit appears to

6    have been incorrectly appended and incorrectly made out.  In

7    other words --

8           MR. LEVITT:  But it wasn't -- it wasn't appended to

9    anything, Your Honor.  I've never seen a lost note.  I'm

10   proceeding with -- and, again, I came into this case very

11   late, but I'm proceeding based upon a record and discovery and

12   Rule 26 disclosures in this case, never, ever mentioning a

13   lost note affidavit, which could have changed this entire case

14   or at least certainly would have required certain discovery.

15          THE COURT:  Well, we're actually asked to disregard

16   that lost note affidavit.

17          MR. LEVITT:  No question, but, Your Honor, I'm just

18   making a point that there's certain -- dealing with the record

19   before Your Honor, and, again, let's deal with what we have

20   now, and Your Honor has dealt with those issues.

21          What's before Your Honor now is -- is a proof of

22   claim and a request that -- for a determination from this

23   Court that this creditor, acting on behalf of the servicer,

24   because, again, there's -- there is a Pooling and Servicing

25   Agreement.  Counsel's argued that they have the right to act

1    on behalf of the mortgage holder.

2            So this Court can determine that the proof of claim

3    is disallowed.  This Court can determine based upon the record

4    before this Court that the Trustee is not a valid secured

5    creditor because it's acting through its servicer pursuant to

6    the Pooling and Servicing Agreement, make that determination

7    in this Court and then I will take it up with the Trustee as

8    to whether or not she wants me -- wants to retain me, first of

9    all -- whether or not she believes its appropriate for us to

10   file an action in this Court to actually get a Court order

11   voiding that mortgage or, quite frankly, just go to the State

12   Court and say the Bankruptcy Court's already made this

13   determination.

14           And now, it's up to you, State Court, to decide

15   whether or not you want to remove this lien against the

16   property.  That's for another day, and I'm sure we'll have

17   another set of arguments and another round of litigation.

18           But the reality is, that's the record.  And, again,

19   we can talk about what if, but up until this day, I haven't

20   seen any attempt to amend the proof of claim.  I haven't seen

21   any attempt to transfer a proof of claim.  So the record is

22   the record.  The record is crystal clear here.

23           THE COURT:  Thank you, sir.

24           I certainly agree.  I think in light of the lack of

25   precedent here in New Jersey for this kind of circumstance, it

1  behooves me to write on this, and I will do that.  There is

2  recognition of lack of possession and lack of endorsement as

3  of the time this case was filed and as of the time the proof

4  of claim was filed.  Those things are uncontested.

5      Regardless of the difficulties in proofs, the

6  machinations of where the note was and whether it was lost and

7  so forth, let's assume that it's now found but never in the

8  possession of the transferee, the Bank of New York as Trustee.

9  It doesn't look like 3-309 gives the -- at least New Jersey's

10  version -- gives the mortgagee any opportunity to overcome the

11  failure to have possession and the failure to endorse.

12      And I think that counsel is correct that -- counsel

13  for the debtor -- that it is what it is and my view should be

14  limited.

15      Having said all of that, I will review, scrutinize

16  and carefully lay out the bases of the decision.  I assume --

17  you can tell where I'm going -- I assume that's where I will

18  end up.  I don't guarantee it, but I'm -- it's fairly

19  straightforward at this point.

20      Now that I understand it and I've cleared away the

21  underbrush if you will, it seems to me that it has to be laid

22  out carefully and completely, and that's what I aim to do.  So

23  I will hold onto this, and I thank you both for your

24  presentations.

25      MR. LEVITT:  Thank you, Your Honor.

1          MR. KAPLAN:  Thank you, Your Honor.

2          (Proceedings concluded at 10:24 a.m.)

3                          * * *

4

5

6                  **C E R T I F I C A T I O N**

7

8

9

10         I, Lois A. Vitarelli, court approved transcriber, certify

11    that the foregoing is a correct transcript from the official

12    electronic sound recording of the proceedings in the above-

13    entitled matter.

14

15

16         /s/Lois A. Vitarelli        January 5, 2010

17    LOIS A. VITARELLI

18    DIANA DOMAN TRANSCRIBING

19

20

21

22

23

24

25