FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In the Matter of | : | Case No. 08-18700-JHW |
| John T. Kemp | : | |
| Debtor | : | |
| _____ | : | |
| John T. Kemp | : | Adversary No. 08-2448 |
| Plaintiff | : | |
| v. | : | |
| Countrywide Home Loans, Inc. | : | **OPINION** |
| Defendant | : | |
| _____ | : | |

APPEARANCES:    Bruce H. Levitt, Esq.
Levitt & Slafkes, PC
76 South Orange Avenue, Suite 305
South Orange, New Jersey   07079
Counsel for the Debtor

Harold Kaplan, Esq.
Dori L. Scovish, Esq.
Frenkel, Lambert, Weiss, Weisman & Gordon, LLP
80 Main Street, Suite 460
West Orange, New Jersey   07052
Counsel for the Defendant

**FILED**

JAMES J. WALDRON, CLERK

November 16, 2010

U.S. BANKRUPTCY COURT
CAMDEN, N.J.

BY: Theresa O'Brien, Judicial
Assistant to Chief Judge Wizmur

Before the court for resolution is the debtor's adversary complaint

seeking to expunge the proof of claim filed on behalf of the Bank of New York

by Countrywide Home Loans, Inc. as servicer.  The debtor challenges the

creditor's opportunity to enforce the obligation alleged to be due, based

primarily on the fact that the underlying note executed by the debtor was not

properly indorsed to the transferee, and was never placed in the transferee's

possession.  Under the New Jersey Uniform Commercial Code, the note, as a

negotiable instrument, is not enforceable by the Bank of New York under these

circumstances.  The plaintiff/debtor's challenge to the proof of claim is

sustained on this record.

### PROCEDURAL HISTORY

On May 9, 2008, the debtor, John T. Kemp, filed a voluntary petition for

relief under Chapter 13 of the Bankruptcy Code.  The debtor scheduled an

ownership interest in several properties, including one located at 1316 Kings

Highway, Haddon Heights, New Jersey, the property at issue in this

proceeding.  Schedule D of the debtor's petition, listing creditors holding

secured claims, listed Countrywide Home Loans as both the first and second

mortgagee, with claims of $167,000 and $42,000, respectively, against the

1316 Kings Highway property.  The debtor's Chapter 13 plan proposed to make

payments over 60 months to satisfy priority claims and to cure arrearages on

three separate mortgages, including the two Countrywide mortgages.[1]

---

[1]    The debtor filed an amended plan on October 3, 2008 which was
confirmed on December 11, 2008 at $2,081 for 54 months.  The modified plan
increased the arrearage to be paid to Countrywide from $18,000 to $34,000,

On June 11, 2008, the defendant herein, Countrywide Home Loans, Inc. (hereinafter "Countrywide"), identifying itself as the servicer for the Bank of New York, filed a secured proof of claim in the amount of $211,202.41, including $40,569.69 in arrears, noting the property at 1316 Kings Highway as the collateral for the claim.[2]  The debtor filed this adversary complaint on October 16, 2008 against Countrywide, seeking to expunge its proof of claim.[3] The debtor asserts that the Bank of New York cannot enforce the underlying obligation.

---

and maintained the second Countrywide mortgage arrears at $6,000.  A second modified plan was filed on April 15, 2010 and is currently scheduled for confirmation on December 8, 2010.  The latest modified plan does not list Countrywide as a creditor to be treated under the plan.

[2]    Although the debtor listed two mortgages held by Countrywide against 1316 Kings Highway in his schedules, Countrywide only filed one proof of claim regarding one mortgage and note.

[3]    In 2008, Countrywide Financial Corporation, the umbrella organization for Countrywide Home Loans, Inc., was purchased by the Bank of America Corporation.  Effective April 27, 2009, Countrywide Home Loans, Inc. changed its name to BAC Home Loan Servicing, L.P. ("BAC Servicing").  Motion to Dismiss, Van Beveren Certif. at 1.  On July 1, 2010, a "Transfer of Claim for Security" was filed on the debtor's claim register, transferring the claim from "Countrywide Home Loans, Inc., servicer for Bank of New York" to "BAC Home Loan Servicing, LP".  In this opinion, I will continue to refer to the defendant as Countrywide.

# FACTS

In his complaint, the debtor does not dispute that he signed the original mortgage documents in question. The note and mortgage were executed by the debtor on May 31, 2006. The note, designated as an "Interest Only Adjustable Rate Note", listed the lender as "Countrywide Home Loans, Inc." No indorsement appeared on the note. Accompanying the note was an unsigned "Allonge to Note" dated the same day, May 31, 2006, in favor of "America's Wholesale Lender", directing that the debtor "Pay to the Order of Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender."[4]

The mortgage, in the amount of $167,000, listed the lender as "America's Wholesale Lender". Mortgage Electronic Registration Systems, Inc., or "MERS", is named as "the mortgagee", and is authorized to act "solely as the nominee" for the lender and the lender's successors and assigns. The mortgage references the promissory note signed by the borrower on the same date. The mortgage was recorded in the Camden County Clerk's Office on July 13, 2006.

Shortly after the execution by the debtor of the note and mortgage, the

---

[4]   The record does not reflect whether the unsigned allonge was physically affixed to the note.

instruments executed by the debtor were apparently pooled with other similar
instruments and sold as a package to the Bank of New York as Trustee.  On
June 28, 2006, a Pooling and Servicing Agreement ("PSA" or "the Agreement")
was executed by CWABS, Inc. as the depositor, with Countrywide Home Loans,
Inc., Park Monaco, Inc. and Park Sienna, LLC as the sellers, Countrywide
Home Loans Servicing LP ("Countrywide Servicing") as the master servicer, and
the Bank of New York as the Trustee.  Pursuant to the Agreement, the
depositor was directed to transfer the Trust Fund, consisting of specified
mortgage loans and their proceeds, including the debtor's loan, to the Bank of
New York as Trustee, in return for certificates referred to as Asset-backed
Certificates, Series 2006-8.  The sellers sold, transferred or assigned to the
depositor "all the right, title and interest of such Seller in and to the applicable
Initial Mortgage Loans, including all interest and principal received and
receivable by such Seller." PSA § 2.01(a) at 52.  In turn, the depositor
immediately transferred "all right title and interest in the Initial Mortgage
Loans," including the debtor's loan, to the Trustee, for the benefit of the
certificate holders.  Id.

    The Agreement expressly provided that in connection with the transfer of
each loan, the depositor was to deliver "the original Mortgage Note, endorsed by
manual or facsimile signature in blank in the following form:  'Pay to the order

of _____ without recourse', with all intervening endorsements that show a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note." PSA § 2.01(g)(i) at 56. Most significantly for purposes of this discussion, the note in question was never indorsed in blank or delivered to the Bank of New York, as required by the Pooling and Servicing Agreement.

On March 14, 2007, MERS, as the nominee for America's Wholesale Lender, assigned the debtor's mortgage to the Bank of New York as Trustee for the Certificateholders CWABs, Inc. Asset-backed Certificates, Series 2006-8. The assignment purported to assign "a certain mortgage dated May 31, 2006 . . . [t]ogether with the Bond, Note or other obligation described in the Mortgage, and the money due and to become due thereon, with the interest." The assignment provided further that the "Assignor covenants that there is now due and owing upon the Mortgage and the Bond, Note or other obligation secured thereby, the sum of $167,199.92 Dollars principal with interest thereon to be computed at the rate of 9.530 percent per year." The assignment was recorded with the County Clerk on March 24, 2008.

At the trial of this matter, Countrywide produced a new undated "Allonge to Promissory Note", which directed the debtor to "Pay to the Order of Bank of New York, as Trustee for the Certificateholders CWABS, Inc., Asset-backed

-6-

Certificates, Series 6006-8."[5]   The new allonge was signed by Sharon Mason,

Vice President of Countrywide Home Loans, Inc., in the Bankruptcy Risk

Litigation Management Department.   Linda DeMartini, a supervisor and

operational team leader for the Litigation Management Department for BAC

Home Loans Servicing L.P. ("BAC Servicing"),[6] testified that the new allonge

was prepared in anticipation of this litigation, and that it was signed several

weeks before the trial by Sharon Mason.


As to the location of the note, Ms. DeMartini testified that to her

knowledge, the original note never left the possession of Countrywide, and that

the original note appears to have been transferred to Countrywide's foreclosure

unit, as evidenced by internal FedEx tracking numbers.   She also confirmed

that the new allonge had not been attached or otherwise affixed to the note.

She testified further that it was customary for Countrywide to maintain

---

[5]      The allonge misidentifies the Asset-backed Certificates as "Series
6006-8" rather than "Series 2006-8."

[6]      Ms. DeMartini testified that Countrywide Home Loans, Inc., the
originator of the note and mortgage at issue here, and Countrywide Home
Loans Servicing LP, the servicer of the loan both before and after the sale of the
loan, were and are two different legal entities under one corporate umbrella.
Her understanding that the entity known as Countrywide Home Loans
Servicing LP became BAP Home Loans Servicing LP when Bank of America took
over the Countrywide entities differs from the representation made in papers
submitted by the defendant herein that the entity known as Countrywide Home
Loans, Inc. became BAP Home Loan Servicing LP.   See n. 3.

possession of the original note and related loan documents.

In a supplemental submission dated September 9, 2009, the defendant
asserted that "the Defendant/Secured Creditor located the original Note.  The
original Note with allonge and Pooling and Servicing Agreement are available
for inspection."[7]  When the matter returned to the court on September 24,
2009, counsel for the defendant represented to the court that he had the
original note, with the new allonge now attached, in his possession.  No
additional information was presented regarding the chain of possession of the
note from its origination until counsel acquired possession.

In sum, we have established on this record that at the time of the filing of
the proof of claim, the debtor's mortgage had been assigned to the Bank of New

---

[7]       In a bizarre twist, in the same September 9, 2009 submission,
Countrywide produced a copy of a "Lost Note Certification," dated February 1,
2007, which indicated that the original note had been delivered to the lender
on the origination date and thereafter "misplaced, lost or destroyed, and after a
thorough and diligent search, no one has been able to locate the original Note."
The defendant asserted for the first time that the "whereabouts of the Note
could not be determined" at the time that the proof of claim was filed.  Def.
Suppl. Subm. at 6.  As a result, Countrywide claimed that it was unable to affix
the allonge to the note until after the original note had been rediscovered.  At
the next hearing on September 24, 2009, counsel was not able to explain the
inconsistencies between the lost note certification, Ms. DeMartini's testimony,
and the "rediscovery" of the note, and asked that the lost note certification be
disregarded.  T13-15 to 16 (9/24/2009).

York, but that Countrywide did not transfer possession of the associated note
to the Bank.  Shortly before trial in this matter, the defendant executed an
allonge to transfer the note to the Bank of New York; however, the allonge was
not initially affixed to the original note, and possession of the note never
actually changed.  The Pooling and Servicing Agreement required an
indorsement and transfer of the note to the Trustee, but this was not
accomplished prior to the filing of the proof of claim.  The defendant has now
produced the original note and has apparently affixed the new allonge to it, but
the original note and allonge still have not been transferred to the possession of
the Bank of New York.  Countrywide, the originator of the loan, filed the proof
of claim on behalf of the Bank of New York as Trustee, claiming that it was the
servicer for the loan.  Pursuant to the PSA, Countrywide Servicing, and not
Countrywide, Inc., was the master servicer for the transferred loans.[8]  At all
relevant times, the original note appears to have been either in the possession

---

[8]       According to a Prospectus Supplement dated June 30, 2006, filed
by Countrywide, Inc. with the Securities and Exchange Commission, see
www.sec.gov, Countrywide Servicing was created to service the loans originated
by Countrywide, Inc.  The Prospectus notes that "Countrywide Home Loans
expects to continue to directly service a portion of its loan portfolio," while
transferring new mortgage loans to Countrywide Servicing.  Prospectus
Supplement at 40.  In addition, because "certain employees of Countrywide
Home Loans became employees of Countrywide Servicing, Countrywide
Servicing has engaged Countrywide Home Loans as a subservicer to perform
certain loan servicing activities on its behalf."  Id.  Because Countrywide Home
Loans, Inc. designated itself as the servicer for the Bank of New York on the
proof of claim at issue here, I assume for these purposes that it is acting in
that capacity on this loan.

of Countrywide or Countrywide Servicing.[9]

## **DISCUSSION**

With this factual backdrop, we turn to the issue of whether the challenge
to the proof of claim filed on behalf of the Bank of New York, by its servicer
Countrywide, can be sustained.  Under the Bankruptcy Code, a claim is
deemed allowed unless a party in interest objects.  11 U.S.C. § 502(a).  If an
objection to a claim is made, the claim is disallowed "to the extent that . . .
such claim is unenforceable against the debtor and property of the debtor,
under any agreement or applicable law for a reason other than because such
claim is contingent or unmatured."  11 U.S.C. § 502(b)(1).

Countrywide's claim here must be disallowed, because it is
unenforceable under New Jersey law on two grounds.  First, under New
Jersey's Uniform Commercial Code ("UCC") provisions, the fact that the owner

---

[9]    The record is unclear about whether the original note has been in
the possession of Countrywide Home Loans, Inc. or Countrywide Home Loans
Servicing LP.  Ms. DeMartini testified both that the original note was always
located in the Countrywide origination file (presumably at Countrywide Home
Loans, Inc.) and that the servicer actually retained possession of the original
note (presumably Countrywide Home Loans Servicing LP).  She also testified
that the "Documents Department" was charged with imaging and storing the
original documents, but the record is not clear about which of the two entities
housed the Documents Department.

of the note, the Bank of New York, never had possession of the note, is fatal to

its enforcement.  Second, upon the sale of the note and mortgage to the Bank

of New York, the fact that the note was not properly indorsed to the new owner

also defeats the enforceability of the note.


Under New Jersey law, the enforcement of a promissory note that is

secured by a mortgage is governed by the UCC.  The note, at issue here, made

payable to Countrywide, providing for interest and an unconditional promise to

pay the lender, is a "negotiable instrument" under the New Jersey UCC, which

defines a negotiable instrument as "an unconditional promise or order to pay a

fixed amount of money, with or without interest or other charges described in

the promise or order, if it:  (1) is payable to bearer or to order at the time it is

issued or first comes into possession of a holder; (2) is payable on demand or at

a definite time."  N.J.S.A. 12A:3-104.  A party is entitled to enforce a negotiable

instrument if it is "the holder of the instrument, a nonholder in possession of

the instrument who has the rights of a holder, or a person not in possession of

the instrument who is entitled to enforce the instrument pursuant to

12A:3-309 or subsection d. of 12A:3-418."  N.J.S.A. 12A:3-301.  In this case,

the creditor may not enforce the instrument under any of the three statutory

qualifiers.

-11-

1.    <u>Holder</u>.

A "holder" is defined as "the person in possession if the instrument is
payable to bearer or, in the case of an instrument payable to an identified
person, if the identified person is in possession." N.J.S.A. 12A:1-201(20).
"Mere ownership or possession of a note is insufficient to qualify an individual
as a 'holder'." <u>Adams v. Madison Realty & Dev. Inc.</u>, 853 F.2d 163, 166 (3d
Cir. 1988). Where, as here, the ownership of an instrument is transferred, the
transferee's attainment of the status of "holder" depends on the negotiation of
the instrument to the transferee. N.J.S.A. 12A:3-201(a). The two elements
required for negotiation, both of which are missing here, are the transfer of
possession of the instrument to the transferee, and its indorsement by the
holder. N.J.S.A. 12A:3-201(b).

As to the issue of possession, we are not certain on this record whether
the party in possession of the note is Countrywide or Countrywide Servicing.[10]
What we do know is that the note was purchased by the Bank of New York as
Trustee, but never came into the physical possession of the Bank. Because the
Bank of New York never had possession of the note, it can not qualify as a
"holder" under the New Jersey UCC. <u>See</u> <u>Dolin v. Darnall</u>, 115 N.J.L. 508, 181

---

[10]    See n. 9.

A. 201 (E&A 1935) ("Since the plaintiff was not 'in possession of' the notes in question, he was neither the 'holder' nor the 'bearer' thereof.").[11]

The second element required to negotiate an instrument to the transferee, i.e., indorsement of the instrument by the holder, is also missing here.  An indorsement means "a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of negotiating the instrument, restricting payment of the instrument, or incurring indorser's liability on the instrument." N.J.S.A. 12A:3-204.  The indorsement may be on the instrument itself, or it may be on "a paper affixed to the instrument."  Id.  Such a paper is called an "allonge", defined as "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements."  See Black's Law Dictionary at 88 (9th Ed. 2009).

The significance of indorsement and affixation requirements to achieve

---

[11]    If Countrywide was in possession of the note, then it would have had "holder" status as of the date of the petition filing date, because the note was payable to Countrywide, no indorsement or allonge had been executed, and Countrywide was in possession of the original note.  However, Countrywide did not file the claim on its own behalf.  Rather, it filed the claim as "servicer for Bank of New York."  The qualification of the Bank of New York, rather than Countrywide, to enforce the note is at issue.

holder status, and thereby qualify to enforce a note against the maker, was

explained by the Third Circuit in Adams v. Madison Realty & Dev. Inc., supra.

The court explained that the maker of the note must have certainty regarding

the party who is entitled to enforce the note.

> From the maker's standpoint, therefore, it becomes essential to
> establish that the person who demands payment of a negotiable
> note, or to whom payment is made, is the duly qualified holder.
> Otherwise, the obligor is exposed to the risk of double payment, or
> at least to the expense of litigation incurred to prevent duplicative
> satisfaction of the instrument.  These risks provide makers with a
> recognizable interest in demanding proof of the chain of title.
> Consequently, plaintiffs here, as makers of the notes, may properly
> press defendant to establish its holder status.

853 F.2d at 168.

At the time of the Adams' decision, the New Jersey UCC provided in

relevant part that "[a]n indorsement must be written by or on behalf of the

holder and on the instrument or on a paper so firmly affixed thereto as to

become a part thereof."  N.J.S.A. 12A:3-202(2) (1961).[12]  The UCC Commentary

explained that this language was in conformance with those

> decisions holding that a purported indorsement on a mortgage or
> other separate paper pinned or clipped to an instrument is not

---

[12]    The New Jersey Study Comment noted that the "wording in
reference to indorsements [was] changed from 'or upon a paper attached
thereto', to 'so firmly affixed thereto as to become a part thereof'.  This change
merely implement[ed] the ancient doctrine of allonge."

-14-

sufficient for negotiation.  The indorsement must on the instrument itself or on a paper intended for the purpose is so firmly affixed to the instrument as to become an extension or part of it.  Such a paper is called an allonge.

In 1995, Chapter 3 of Title 12A was amended and subsection 2 of 12A:3-202 was revised, renumbered, and included as the last sentence in N.J.S.A. 12A:3-204(a).  As revised, the provision now states that "[f]or the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument."  N.J.S.A. 12A:3-204(a).

In this case, we had neither a proper indorsement on the note itself, nor an allonge that was executed at the time the proof of claim was filed.  An allonge purporting to negotiate the note to the Bank of New York was not executed until shortly before the original trial date, and was not affixed to the original note until the second trial date.  Even if the newly executed allonge is recognized as a valid indorsement of the note, under these circumstances, the Bank of New York does not qualify as a holder, because it never came into possession of the note.[13]

_____

[13]     As an additional argument in support of the proposition that the Bank of New York qualifies as a holder who may enforce the note, the claimant cites to Mulert v. National Bank of Tarentum, 210 F. 857, 860 (3d Cir. 1913) for the proposition that it had constructive possession of the note because Countrywide intended to transfer possession, and that constructive possession is sufficient to permit the transferee to enforce the note.  This proposition is not sustainable in light of the actual possession required under the New Jersey

2.   <u>Nonholder in Possession</u>.


Nor does the claimant qualify as a non-holder in possession who has the

rights of a holder.  "A person may be a person entitled to enforce the

instrument even though the person is not the owner of the instrument or is in

wrongful possession of the instrument."  N.J.S.A. 12A:3-301.  The Official

Comment to section 3-301 adds that this definition:

> includes a person in possession of an instrument who is not a
> holder.  A nonholder in possession of an instrument includes a
> person that acquired rights of a holder by subrogation or under
> Section 3-203(a).  It also includes both a remitter that has received
> an instrument from the issuer but has not yet transferred or
> negotiated the instrument to another person and also any other
> person who under applicable law is a successor to the holder or
> otherwise acquires the holder's rights.

<u>Id</u>. at UCC Comment to § 3-301.  Countrywide, the originator of the loan and

the original "holder" of the note, sold the note to the Bank of New York as

Trustee.  In this way, the Bank of New York is a successor to the holder.  As a

successor to the holder of the note, the Bank of New York would qualify as a

non-holder in possession who could enforce the note by its servicer if it had

possession of the note.  Because the Bank of New York does not have

possession of the note, and never did, it may not enforce the note as a

_____

UCC.  <u>See</u> N.J.S.A. 12A:1-201(20).

nonholder in possession.

3.   Non-holder Not in Possession.

The third category that would enable a claimant to enforce the note would be a person not in possession of the note who is entitled to enforce the note pursuant to N.J.S.A. 12A:3-309 or subsection d. of N.J.S.A. 12A:3-418. Section 12A:3-309 concerns the enforcement of lost, destroyed or stolen instruments.[14]  The defendant presented a lost note certification to this court,

_____

[14]    N.J.S.A. 12A:3-309 provides:

a. A person not in possession of an instrument is entitled to enforce the instrument if the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, the loss of possession was not the result of a transfer by the person or a lawful seizure, and the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

b. A person seeking enforcement of an instrument under subsection a. of this section must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, 12A:3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

but the factual predicate of the certificate conflicted with other facts presented

on this record, and we have determined to disregard the certificate.[15]  Section

12A:3-418, concerning payment or acceptance by mistake, does not apply here.

In a recent District Court decision from the District of Massachusetts,

the court rejected the enforcement of a note where the assignee of the note and

accompanying mortgage did not have possession of the note.  Marks v.

Braunstein, No. 09-11402-NMG, 2010 WL 3622111 (D.Mass. Sept. 14, 2010).

In Marks, the assignee of the note and mortgage purchased the collateral for

the note, a commercial building, from the Chapter 7 trustee, filed a secured

proof of claim, and sought to enforce the note and mortgage against the

proceeds from the sale.  When the matter first came on to be heard, the

claimant confirmed that he was not in possession of the note and was unaware

of who was in possession of it.[16]  Because the claimant acknowledged that he

was never in possession of the note, he was precluded from reliance on Section

3-309A of the Massachusetts UCC, which permits enforcement of a lost,

destroyed or stolen instrument, but requires possession of the instrument at

---

[15]     See n. 7.

[16]     Following the disallowance of the proof of claim by the court, the
claimant discovered the location of the note.  However, the bankruptcy court
denied his motion for reconsideration of the disallowance.  The denial was
affirmed by the District Court.  Marks v. Braunstein, 2010 WL 3622111 at *5.

some point.  Citing to <u>Premier Capital, LLC v. Gavin</u>, 319 B.R. 27, 33 (1st Cir.

BAP 2004), the <u>Marks</u> court reflected that "[t]he purpose of the possession

requirement in Article 3 is to protect the Debtor from multiple enforcement

claims to the same note." <u>Id</u>. at *3.  Acknowledging that conflicting

enforcement claims were not a concern in the case before it, the court

nevertheless applied the statutory requirements to hold that the note could not

be enforced by the claimant to collect proceeds otherwise due to the claimant

from the sale of the collateral on account of his secured claim.


Similarly, in this case, the purchaser of the note and mortgage, the Bank

of New York, never had possession of the note.  Therefore, under the Uniform

Commercial Code as adopted in New Jersey, the Bank of New York as Trustee

may not enforce the instrument.


On behalf of the Bank of New York, Countrywide contends that the

written mortgage assignment in this case, which purports to assign both the

note and mortgage in this case, and which was properly executed and recorded

with the appropriate county clerk's office, serves to properly transfer the note

to the new owner, enabling the new owner to enforce both the note and the

mortgage.  The recorded assignment of mortgage does include provision for the

assignment of the note as well.  However, the recorded assignment of the

mortgage does not establish the enforceability of the note.  As discussed above,

the UCC governs the transfer of a promissory note.  <u>See</u> 29 Myron C. Weinstin,

New Jersey Practice, Law of Mortgages, § 11.2 at 749.  The attempted

assignment of the note in the assignment of mortgage document, together with

the terms of the Pooling and Servicing Agreement, created an ownership issue,

but did not transfer the right to enforce the note.

> The right to enforce an instrument and ownership of the
> instrument are two different concepts. . . .  Moreover, a person who
> has an ownership right in an instrument might not be a person
> entitled to enforce the instrument.  For example, suppose X is the
> owner and holder of an instrument payable to X.  X sells the
> instrument to Y but is unable to deliver immediate possession to Y.
> Instead, X signs a document conveying all of X's right, title, and
> interest in the instrument to Y.  Although the document may be
> effective to give Y a claim to ownership of the instrument, Y is not a
> person entitled to enforce the instrument until Y obtains
> possession of the instrument.  No transfer of the instrument
> occurs under Section 3-203(a) until it is delivered to Y.

N.J.S.A. 12A:3-203 (UCC Cmt. 1).  Accordingly, the Bank of New York has a

valid claim of ownership, but may not enforce the note on the basis of the

reference to the note in the recorded assignment of the mortgage.

The fact that the proof of claim in question was filed by "Countrywide

Home Loans, Inc., as servicer for Bank of New York, Trustee" does not alter the

enforceability of the note.  Bankruptcy Rule 3001(b) provides that a proof of

claim may be filed by either the creditor "or the creditor's agent."

FED.R.BANKR.P. 3001(b).   Here, Countrywide, Inc. was the originator of the

note and mortgage, but sold both the note and mortgage to the Bank of New

York as Trustee, and filed the proof of claim as the "servicer" for the Bank of

New York.  A servicer has standing to file a proof of claim on behalf of a

creditor.  See, e.g., Greer v. O'Dell, 305 F.3d 1297, 1302 (11th Cir. 2002) ("A

servicer is a party in interest in proceedings involving loans which it services.");

In re Viencek, 273 B.R. 354, 358 (N.D.N.Y. 2002); In re Gulley, No.

07-33271-SGJ-13, 2010 WL 3342193, *9 (Bankr. N.D.Tex. Aug. 23, 2010)

("many courts have held that a mortgage servicer has standing to participate in

a debtor's bankruptcy case by virtue of its pecuniary interest in collecting

payments under the terms of a note"); In re Minbatiwalla, 424 B.R. 104, 109

(Bankr. S.D.N.Y. 2010); In re Conde- Dedonato, 391 B.R. 247, 250 (Bankr.

E.D.N.Y. 2008) ("A servicer of a mortgage is clearly a creditor and has standing

to file a proof of claim against a debtor pursuant to its duties as a servicer.").

But Countrywide, as the servicer, acts only as the agent of the owner of the

instrument, and has no greater right to enforce the instrument than its

principal.  See, e.g., Greer v. O'Dell, 305 F.3d at 1303.  Because the Bank of

New York has no right to enforce the note, Countrywide as its agent and

servicer cannot enforce the note.[17]

---

[17]    As noted, Countrywide Home Loans, Inc. is listed as the servicer
on the debtor's loan.  However, there is serious question raised about the
authority of that entity to file a proof of claim on behalf of the Bank of New

**<u>CONCLUSION</u>**


Because the claim filed by "Countrywide Home Loans, Inc., servicer for

Bank of New York" cannot be enforced under applicable state law, the claim

must be disallowed under 11 U.S.C. § 502(b)(1).




Dated:   November 16, 2010                    _____
                                             JUDITH H. WIZMUR
                                             CHIEF JUDGE
                                             U.S. BANKRUPTCY COURT




_____

York.  A Power of Attorney dated November 15, 2005 was submitted, affording
Countrywide Home Loans Servicing LP, not Countrywide Home Loans, Inc., the
limited opportunity to perform all necessary acts to foreclose mortgage loans,
dispose of properties and modify or release mortgages, presumably including
the authority to file a proof of claim in a bankruptcy case.